May it please the court, my name is Jesse Wing and this is Joseph Schaefer and we represent the nine appellants, state employees in this matter. Seventy years after the U.S. Supreme Court's decision in Korematsu, the question is whether now in 2015 the state of Washington doesn't have to meet strict scrutiny before deciding to segregate employees in its state workplace. And sixty years after the court's decision in Brown, this court is asked whether or not separate is equal in the state workplace. Nine employees ask this state to say no, separate is not equal. It's inherently unequal and offensive even if the goal that the state says it seeks to achieve is security. Now, under the Constitution and Title VII, state-sponsored race classifications must satisfy strict scrutiny or the BFOQ test. To say we agree with you that strict scrutiny applies, why is there still not qualified immunity? What case said that for a very temporary amount of time an institution can't put in a race-based policy to deal with an urgent safety issue and then resolve it a few days later after the weekend? What case said that some kind of action like this was unconstitutional? Well, I think that the repeated statements of this court and the U.S. Supreme Court that says strict scrutiny applies in every circumstance. But sometimes, yes, strict scrutiny applies, but sometimes it's satisfied. So how do you get past qualified immunity? They could have thought, yes, strict scrutiny applies, but we have a very compelling problem here. We need to protect our employees. We pass strict scrutiny. What case said that would have been wrong? Your Honor, in the Rutebush case, which said that strict scrutiny applies in— We agree with you. Okay. Let's say we agree with you. Let's get past that. The district court was wrong in not applying strict scrutiny. Okay. Now, let's get past that, and let's get to qualified immunity, right? Fair enough. Even if racial classification, which this was, is subject to strict scrutiny, do you have a case that says a short-term racial classification in a prison-like setting, like this hospital here, in response to a very race-specific safety threat is unconstitutional? That occurs over a period of one weekend, as the state court found. I don't have such a case, Your Honor. In fact, Johnson v. California, the Supreme Court case that made very clear that you have to apply strict scrutiny, even in a prison context where there are safety concerns, said prisons are dangerous places, and the special circumstances they present may justify racial classifications in some contexts. The Supreme Court is saying, even though strict scrutiny applies, in this case where they're emphasizing that, they say you might survive strict scrutiny depending on the particular circumstances. What about this situation was so egregious that a reasonable employee couldn't have thought, we need to do something very temporary to save these employees, and we'll figure it out on Monday? Well, Your Honor, I think that there's no reason to think that the state could do this, and one of the reasons why is not because of case law, but because there must be some medical reason to do this. So on a nailering tape, excuse me. But if you don't have a case, as you acknowledge, then why is it that defendants aren't entitled to qualified immunity? Well, I would say that our primary goal here is declaratory injunctive relief. So suppose you grant them qualified immunity. Let's suppose we concede that. So can you break down who you have claims against here? I thought that these claims were against individual employees, and they were only claims for damages for which there was qualified immunity. Can you explain what claims you're talking about could survive under a theory where qualified immunity wouldn't be a bar? Yes. The state of Washington, the Western State Hospital, and DSHS are defendants. But haven't they asserted sovereign immunity? I didn't think you had these claims against them. Yes, we do. Could you say where in the complaint these claims are brought against the hospital and where there's not sovereign immunity for the state itself? I guess I'm concerned about getting off track. When a person sues a state official in their official capacity, you're suing the government entity. Oh, okay. Okay, right. I thought you were saying you're suing the entity itself. You're suing them in their official capacity, but this policy is no longer continuing. So how do you have standing for injunctive relief? The state court, which I think you've got an issue preclusion problem given the state court's finding that this was a three-day policy and it's been over for a long time. If we're inclined to give issue preclusion to that issue that was resolved, the factual issue in the state court, then how do you possibly get injunctive relief for a policy that's been over for a long time? What the state court found was that the specific directive ended after the weekend, not the policy. The state court said zero about the fact that its own CEO testified that there's an ongoing policy in practice and the testimony of several. Well, what's the evidence of the ongoing policy in practice if this thing that happened that you're really upset about was a three-day incident a long time ago? So maybe they, I mean, you seem to be worried that theoretically there's still some policy this might happen again, but is there any actual on-the-ground implementation of this policy? Oh, yes. What is it? Oh, there was the testimony of three mid-level managers, Cancio, Hibbard, and I'm trying to remember the name of the other one, and two other employees who say that, in fact, on four of the wards, four out of nine wards, they do this on a weekly, monthly basis. And, in fact, the most recent time there was a two-year period where, in a particular ward, it ended in December of 2014 where they were implementing this, and it affected one of our plaintiffs, Joey Lopez. The state of Washington has misrepresented for the life of this litigation that these events have not been occurring, and it was only during the course of our state law case that all of this came to light, and it's been submitted to this court. But the state court found the policy. So you seem to be saying something about policy versus directive, but my understanding of what the state court found is they disagreed with you about this. The state court didn't make any findings about it. Well, is there anything in the record here that would satisfy evidence of similar race-based staffing since April of 2011? I'm sorry, Your Honor. Yes. What did you say? Can you point to any evidence in this case of similar race-based staffing subsequent to April of 2011? Yes. In response to the defendant's motion for judicial notice, we submitted the testimony that I'm talking about to this court, and this court should not take a blind eye to the actual evidence of what is ongoing. But we can't take judicial notice of that for the truth of the matter. We can't take this testimony that happened in some other case and view it as evidence in this case. We might be able to take judicial notice of the fact that there was this proceeding, but do you have any case that says we can actually take that for the truth of the testimony? Yes. We cited in our response, along with all this information, that this is just the kind of thing that the court can take judicial notice of, just in the same way that the court could take judicial notice of the ruling in that case. The state has failed to- The ruling we can take judicial notice of because the ruling itself, the existence of the ruling can have preclusive effect here. But whether we believe the testimony or not, and we can take judicial notice of the fact that the testimony occurred, but we can't evaluate its credibility. It's the testimony of the CEO of the hospital. The court need not evaluate its credibility. It's a judicial admission and testimony in court. And the same with the other employees. It's just the sort of thing that the court can take judicial notice of, and the state has offered nothing in response. I will add that this is a pretty severe discovery violation to have misrepresented repeatedly to the federal court, to the plaintiffs and to this court, that there is no such policy in practice. The plaintiffs are hamstrung, unable to present evidence that they don't know exists. And then for the state to say here, neener, neener, you weren't able to get this, is impossible for this court to allow. I can't turn a blind eye to the reality of this evidence. Did you file an actual motion for judicial notice, or did you just mention this in a brief in response to their motion? In response to their motion, we asked the court to take judicial notice. Is that a proper motion for judicial notice? I'm not aware of a rule that governs whether it needs to be a separate motion or in response. And the defense didn't point to any rule. I'm not sure, or maybe I just didn't hear, your answer to Judge Zuhari's question as to whether there's any evidence in the record showing that this race-based staffing directive occurred again after the weekend that's in question, the weekend that the state court was talking about, April 2 to April 3, 2011. The evidence is in the form of the testimony that I just described, which was submitted in response to the judicial notice. That is the evidence. Let me go to, if I can, you argue that MP's aggression was limited to man when there is evidence in the record that MP also threatened Eddie Griffin, an African-American, and you seem to minimize MP's conduct to threats of harm when in fact MP was quite violent towards other staff members, causing injuries so severe that some were temporarily or permanently prevented from returning to work. What do I do with those facts? Ignore them? Your Honor, the state's testimony and all the evidence shows this is a very dangerous workplace, and the state has tools for dealing with that. Why did they need to use this unsanctioned illegal tool when in fact in all other circumstances they don't use this tool? They can use medication which was missing. They can ask somebody to seclude themselves, and if it is that dangerous that it were to meet strict scrutiny, the hospital policies require seclusion or restraint. If it meets the standard for the 14th Amendment, it meets the standard for the hospital's own policy of seclusion and restraint, which they have done in other cases. Your Honors, I am now about four minutes, and would like to reserve the rest of my time if I may. All right, you may. Thank you. Good morning, Your Honors. My name is Christopher Lanise, Assistant Attorney General, and I represent the defendants in this appeal. I hope you'll help us out at the get-go and talk about what there is with respect to evidence of other situations with race-based staffing. Absolutely, Your Honor. I'd be happy to. There is no evidence in this appellate record of any other race-related, as is alleged in this case, staffing decisions at Western State Hospital. The sole evidence that the plaintiffs are referring to in this argument was contained in the improperly attached trial testimony in response to our motion for judicial notice. I believe Your Honor was correct in that those facts were disputed. There is no example of any case law that the state was able to find where judicial notice of trial testimony is allowed to be taken in a separate matter other than the cases such as they cited, where it was a colloquy at a plea situation or a sentencing. Examples of actions taken by the court that were recorded in a trial transcript. They cite no case where contested trial testimony may be considered by means of ER 201 judicial notice in a subsequent proceeding. There's simply no authority for that. And so there is, Your Honor, no evidence properly considered in this record considering other race-based staffing decisions. So do you know what he's talking about, about what he's calling an admission here? What was the testimony? Was it actually something that could be considered an admission? It cannot be considered an admission for multiple reasons. First of all, an admission itself is not subject to judicial notice. This, again, would be a contested fact, the different context of those statements. Secondly, there was extensive discovery in this state case, which, again, I applaud. I was not counsel of record for in that case, so I'm not as intimately familiar. But there were suggestions that things may have happened in other situations. I'm not aware of any case or situation where the CEO admitted that there were similar staffing decisions that were made. I'm not aware of anything of that nature. And it's certainly not in anything appropriately considered in the record in this appeal. So your argument is that we're limited to the state court findings that since April 2011, none of the plaintiffs have been on the shift in which a similar staffing assignment was made? Exactly, as well as the later finding, this is paragraph 10 of the findings, that all the plaintiffs testified this kind of directive had never happened before or after April 2, 2011. It wasn't limited to them. It was also speaking in terms of their knowledge of other similar situations. The court clearly in the state court action had presented to it the theory by the plaintiffs that this had previously occurred and was continuing to occur, and the court rejected that in this order. The court said there's no evidence that this happened before or after April 2. In fact, the court also made credibility findings, such as with respect to Plaintiff Blackburn, that she was not credible. They may have made this testimony, but that is why we have trials to weigh competing types of credibility, the evidence, and it's then memorialized in the end with factual findings and conclusions of law. And that's what this court is limited to in considering the preclusive effect of the state court decision. Now if I may also address the qualified immunity question. Although the state, as we indicated in our briefing, believes that there is no case that exists that says that an adverse employment action is not required in the context of equal protection claims against public employers, if this court were to find that, that itself, the fact there is no prior case, would lend qualified immunity towards the state. We would not be allowed to be held liable for damages in that situation. So are you in agreement with, it appears, everyone who has searched for such a case? You haven't found one, have you? I've not found one. I'm always hesitant to say it doesn't exist, but I've spent a lot of time looking for that case because I wanted to make sure. And I have not seen such a case. In fact, there are cases that we cited to the contrary for the 2nd, 5th, and 7th circuits expressly saying that an adverse employment action or action sufficiently severe or pervasive to constitute a hostile work environment is required to support a race-based 1983 equal protection claim. So again, under the law that exists currently on Westlaw and elsewhere, there is no case that I was able to find or that the plaintiffs had certainly cited supporting that. And in contrast, there is contrary authority. But even if this Court were to get past that point, the fact that there is no existing authority would support qualified immunity, which then, of course, leads to the inquiry raised by counsel as to whether or not declaratory or injunctive relief would be permitted in this case because, again, qualified immunity is only as to damages. But again, there's no evidence that they have standing to raise those claims at this point. In fact, that is expressly precluded by the state court's findings in this case that said this only happened before. And again, I will hearken back to the beginning of this litigation. So is there any evidence of an immediate threat of substantial injury if what you've just said is true? Absolutely not. Absolutely not. And that is one of the several bases we support for our argument that there is no declaratory or injunctive relief that would be appropriate in this case. And again, when this case was first initiated in 2011, there was a motion for a preliminary injunction. There was an interlocutory appeal taken to this court in this courtroom. This court found at that point that the preliminary injunction had been properly denied because there was no evidence that this was continuing. And that still continues to be the case. I'm curious as to the current status with MP. Have things settled down? My understanding is things are better than they were in 2011. I am not personally privy to the situation, but I do not believe it's in the same dire straits that they were facing in early April 2011, fortunately. So I'd also like to talk briefly about the alternative of what means that the state court judgment has a preclusive effect on this litigation and this appeal, which is res judicata, which is under Washington law, which governs due to the full faith and credit clause, the preclusive effect of a state court judgment. Res judicata applies to another action. If a first action resolves in a final judgment on the merits, which we have here, and there is identity of cause of action, that's the only element that there's really any dispute between the parties as to res judicata. Now the plaintiff suggests that literal identity of cause of action is required under Washington law, but Washington law is exactly the opposite. We look at the common four-factor test that is similar to that found in federal law. When you look at does it arise from the same common nucleus effects, would the same evidence be presented at trial, are the same rights and interests involved, i.e. the right to protect your patients or the right to be free from race discrimination. This exact same dispute was litigated through a trial and finally resolved to the defendant's favor five months ago. That is a final judgment, the preclusive effect under Washington law of which is not limited by the fact that that's pending appeal, and that resolves any and all claims arising from this situation. Again, there are some retaliation and hostile work environment claims that we're resting on our briefing as to, but as to the core staffing-related claims, we don't need to reach this issue preclusion, is this issue the same as that issue? This is the same dispute. Race discrimination alleged from early April 2011. Same parties, same actions, same evidence. There's no need to take additional inquiries into that point. So we start with there's race judicata. The second independent basis for affirming is the collateral estoppel effects, which we discussed in terms of qualified immunity, but it's the additional basis that the court found no adverse employment action. And again, all existing appellate authority that speaks to this issue says that's a required element for an equal protection claim against a public employer. So right there, there's three independent bases for reaching the merits in this case. And then you look at the merits, and as we indicated, the district court made the case. Absolutely. Do you have a case that says you need, sorry, I'm not sure I'm going to be able to say exactly what you just said, but an actual adverse employment action for a 14th Amendment equal protection claim. I know you need it for the Title VII version, but I'm not sure I've seen a case that you're citing for what you just said. Yes, Your Honor. There are several cases from the 2nd, 5th, and 7th Circuit. It would actually probably be easier if I could direct you to the pages where I cited this in our briefing, which I believe was pages 19 and 20. That's correct. On page 21 of our briefing, we cite Rogers v. Roosevelt Union Free School District. This is a 2nd Circuit case from 2014. As to Rogers' 1983 claims, the district court properly determined that she failed to adduce evidence that she suffered an adverse employment action. This was an equal protection 14th Amendment claim. But do those cases involve an express racial classification? I do not believe they did. However, there is no... I mean, that's a big difference, right? I mean, if you're talking about disparate impact or a different kind of claim, it's a very different analysis than an express racial. Well, these were not disparate impact claims, though. Disparate impact is where there's a facially neutral, broadly impacting policy that has disparate impact over a large body of people. Disparate treatment is as to an employment decision made with respect to a single individual. And under the law, the only difference between an express, I admit, I base this on race, and doing it where the plaintiff believes it was based on race is the level of proof that is shown as to the discriminatory intent element. I just want to make sure that I'm not missing any case that you rely on that's out there. Is there a case that you're aware of involving an express racial classification that stands for the proposition that you're relying on? No, I'm not aware of any case that involves an express racial classification. But again, the cases... I'm not aware of any cases to the contrary that say that an adverse employment action is not required. And I'm also not aware of any case law supporting the fact that there's a different analysis that comes into play when it's expressed. If an employer... There's no policy supporting the fact that a sneaky employer that doesn't admit why they're making a discriminatory employment action gets the additional protection of, well, you have to show an adverse employment action. But it makes a huge difference, right? If the issue is maybe there was something going on that led to a bad action against me, but there's no bad action at all because there's no harm, it's really different than the... You know, having an express racial classification has dignitary interests and other interests that may follow regardless. So those are really different. There are different factual circumstances that would apply. Absolutely, Your Honor. But that leads into an additional consideration when we're looking as to the constitutional claims. And I don't believe there can be any dispute that an adverse employment action is required under Title VII. That's just clearly based under the law. When we're looking at the constitutional interests, however, by definition, when the Constitution is in play, we are dealing with a state actor. And a state actor isn't just dealing with the constitutional interests of a single individual. We look at this situation. We cited hypothetical situations in our brief. I know at times courts don't like hypothetical situations, but for better or for worse, Western State Hospital is the land of law school hypotheticals where we're dealing with not guilty by reason of insanity, most violent workplace in Washington, criminally insane individuals by definition. We're concerned with the constitutional rights of many different individuals. That doesn't just include the individuals at issue in this case, the plaintiffs. It also includes the patients. The patients have substantive due process rights under the Fifth and Fourteenth Amendments to not be forcibly medicated unnecessarily, to not be put in seclusion and restraints, to be safe in person and in their treatment. And there's also the substantive due process rights under the Fifth and Fourteenth Amendments of surrounding individual employees. Just because one of the plaintiffs here is willing to take the risk and get swung at by patient MP, nearly 300 pounds, very violent individual, that's going to require the other two-to-one monitor to get involved, and they can get injured as well. That wasn't a decision they got to make. And so where there's a suggestion that perhaps the individuals here should have been allowed to take that risk, that ignores the constitutional interests of the bystanding employees and, more importantly, of the patients at Western State Hospital. And that's why cases such as Johnson Controls are not as relevant in this consideration when you're looking in the context of a state actor. We have constitutional interests that private employers do not, that we have to balance. Johnson Controls dealt with the situation where there were stereotypes, where they were assuming that women wanted to have families, even though it had an impact on men's reproductive organs as well. But here we have the unique and flexibility-required situation where we have to make these on-the-fly decisions in exigent circumstances, not just for the safety of the plaintiffs, but for the safety of surrounding individuals, including the other patients. Can you talk to me for a moment, please, about the household work environment claim, what we do with that? Why was Kimmerling not terminated for his misconduct? Kimmerling was not terminated. I don't know the exact answer to why he was not terminated. When we look at Mr. Kimmerling, however, the case law... Individuals at Western State Hospital are entitled to civil service rules, collective bargaining agreements, things of that nature. What I would suspect would be that due to progressive discipline in that system that's required when there's a first-time actor who takes a bad step such as this, typically a written reprimand is the first thing that would occur. But more importantly... That's what he got, investigated and a written reprimand? He was reassigned pending investigation. The investigation showed it was substantiated. He then signed written directives and expectations this wouldn't happen again. He received a written reprimand, and it never happened again. There's no evidence in the record here that this happened again. Under the case law, when looking at the adequacy of employers' follow-up steps, that is the critical linchpin. Whether or not it happens again. By definition, if it doesn't happen again, those precautionary measures to prevent it from happening again are sufficient as a matter of law. Finally, the suggestion that the plaintiffs should have had additional opportunities to decide whether or not to take these steps and to actually work with patient MP. If those options were given to only the plaintiffs in this case who were deemed to be at risk, which were African-American employees, by definition that's discriminating against the other employees. They don't get that option to not work with the most violent patient in the most violent workplace in Washington. If we're giving that option to the plaintiffs who are African-American, I don't want to work with that guy either, one could say. That is inherently discriminatory as well. In the unique circumstances faced in the not guilty by reason of insanity ward in the most violent patient in a very bad time, unfortunately, in his therapeutic situation, which in fact his two-to-one monitor who is truly the target of his ire that we learned afterwards, had himself removed himself from the situation because he saw that he was being counter-therapeutic. He saw he was being racially focused. He removed himself. He didn't work with him again, and he's not a plaintiff in this case. He saw the needs to balance those constitutional interests, that there was not even an allegation of discriminatory animus, and for these reasons and the additional reasons stated in our briefing, we respectfully request that the district court be affirmed. Thank you. Thank you, Your Honors. First, why are we here? The state of Washington believes and continues to believe that so long as this court tells it it may not do so, regardless of qualified immunity, it will continue that whenever it thinks it's needed to make these decisions for short-term or long-term. The state needs to know whether this is ever allowed. That's the essence of why we are here. And we're getting sidetracked with the little games about whether this constitutes an adverse action, when in fact we know that the government has the BFOQ responsibility here. There's no case law that I'm aware of that says where a government has made an explicit decision that it needs to act based on a protected classification, the plaintiff must show an adverse action. The government has the burden to show a BFOQ. And as a matter of law, there is no BFOQ under Title VII. The government has not addressed that at all. But under Title VII, you have to show an adverse employment action. What is your adverse employment action? Your Honor, in my opinion, the BFOQ analysis doesn't involve an adverse action. Once the government, the employer, says we're going to classify people based on race because it's required for this task or this job, that's the end of the analysis. I don't see in the BFOQ cases a discussion of the adverse action. That's where I draw that inference from. But I also want to point out, and I hesitate to say this, but I really think it's a fraud on the court for the state to stand here and say we're not aware of anything that's going on in Western State Hospital where this policy is being practiced. We've submitted it to you. It's docket 42-1 in which the CEO says, yes, we have this policy, and a whole bunch of employees say we're applying it. How can the state stand here and say we have no idea? It's not properly in the record. We also know that we filed a Rule 60B motion. The state court said all plaintiffs have testified that this kind of directive has never happened before or after April 2, 2011. Since April 2011, none of the plaintiffs have been on a shift in which a similar staffing assignment was made. The state court made a lot of findings relevant to this, right? The state court did make some relevant findings, but what the plaintiffs know doesn't really matter here. One of the big testimonies, Ms. Cancio, the head nurse, testified that Joey Lopez didn't know that he was being classified by race as of December 2014, and he only found out in the trial. So relying on the fact that the plaintiffs don't know that there's a policy being implemented which they're not told about, which there's no documentation of, no review of, and can last as long as an individual nurse wants it to, that's the issue here, not what the plaintiffs know. By citing these things and ruling against you, didn't the state court necessarily find that there was no ongoing policy like this? I mean, you're playing with the words of saying policy versus directive, but how is the distinction you're making one that could comport with what the state court did? The state court seems to be focused entirely on what happened in 2011 and when that ended, and she does not in any way address all the testimony and evidence about the policy that the CEO testified to and the behavior of all the other employees who testified that it's ongoing. She makes no findings about that, and they're undisputed. I do also want to point out... When the state court says the evidence clearly demonstrates that the directive was rescinded by April 4 and not by April 5, plaintiffs were, you're making a distinction between the policy and the directive, and you're saying that the state court findings didn't address that? Yes. Because as I read it, it seemed to have all, multiple findings seemed to clearly suggest, if we the state court's findings give it preclusive effect, that this only happened over one weekend. It never happened before, didn't happen since, and that the plaintiffs all testified to that and the directive was rescinded by April 4, 2011. May I address that, Your Honor? That's a tough record for you. May I address that, Your Honor? Sure. It's certainly not a record that I wanted. I'll grant you that. But... It's the record I've got, but there's absolutely nothing about the judge's ruling which addresses the broader policy. She's talking about a directive by a particular person, Lila Rooks, okay, one of the defendants, who said here's what we're doing. And the CEO testifies unequivocally, and it's undisputed, who says, we have this general policy that whenever a nurse thinks this is something she can do. The judge in the state court case didn't address that at all. She's just referring to this specific decision by Lila Rooks at that time. Alright, we've got your argument. You're over time, so unless my colleagues have any additional questions... Thank you for your time, Your Honor. We thank both sides very much for your helpful arguments in this case, and the matter is submitted for a decision.
judges: Zouhary, Nguyen, Friedland